UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: MARY SUAREZ,

Debtor. Case No.: 19-12442-j7

**MEMORANDUM OPINION**

Before the Court is the chapter 7 trustee's (the "Trustee's") objection to debtor Mary Suarez's claim of a homestead exemption in her residence (the "Property"). The chapter 7 trustee maintains that Ms. Suarez cannot claim an exemption in the Property because, having given a warranty deed (the "Warranty Deed") to the Property, absolute in form, to a trust for which she is neither grantor, trustee, nor beneficiary, she no longer owns the Property and the Property is not part of the estate. Despite the language of the Warranty Deed, Ms. Suarez asserts that she has an interest in the Property that she may exempt from the bankruptcy estate under New Mexico law.

On February 25, 2020, the Court held the final hearing on the Trustee's objection. Ms. Suarez and Anjenette Ramos, Ms. Suarez's daughter, testified without objection. After the final hearing, the Court entered an order directing the parties to brief the following issue:

> Whether, notwithstanding the execution and recordation of the deed admitted into evidence as Exhibit 4, [Ms. Suarez] has an equitable interest in the Property, such as a life estate, which she can exempt in her bankruptcy case under NMSA 1978, § 42-10-9 and applicable bankruptcy law. The briefs should address the effect of the undisputed fact that there is no writing evidencing a life estate and no recorded grant of a life estate to [Ms. Suarez].

Briefing having been completed, the matter is now before the Court. The Court will overrule the Trustee's objection.

# FINDINGS OF FACT[1]

In 2015, Ms. Suarez, who lived in Texas, began looking for a home in Albuquerque. Anjenette Ramos and her husband, Donald Ramos (collectively, "the Ramoses") and Ms. Suarez verbally agreed that the Ramoses would provide Ms. Suarez $50,000 for a down payment on her purchase of a house, if Ms. Suarez obtained financing in her name for the balance required for the purchase, and that during the remainder of her life Ms. Suarez would assume responsibility for mortgage payments, property taxes, and maintenance and utility costs for the house. Ms. Suarez and the Ramoses verbally agreed that Ms. Suarez would be entitled to live in the house for the rest of her life and that the Ramoses would recoup their down payment from sale of the house after Ms. Suarez's death. This oral agreement (the "Oral Agreement") was never memorialized in writing. After obtaining a loan of $70,849.75 from Wells Fargo Bank and receiving $50,000 from the Ramoses, Ms. Suarez purchased a condominium (the "Property") and moved into it over Labor Day weekend in 2015. Consistent with the Oral Agreement, once the sale closed, Ms. Suarez owned the Property in fee simple and the Ramoses held a contract right to repayment of the down payment funds. Since then, Ms. Suarez has occupied the Property continuously and is solely responsible for payment of, and has paid, the mortgage and property taxes, as well as insurance, repairs and maintenance, and utility costs.

In December 2015, in an effort to ensure that the Ramoses recouped the $50,000 down payment in accordance with the Oral Agreement, Ms. Suarez executed the Warranty Deed transferring the Property to the Ramos Living Trust ("the Trust").[2] The Ramoses are the trustees

---

[1] The Court makes findings of fact pursuant to Fed.R.Civ.P. 52(a), made applicable to this contested matter by Fed.R.Bankr.P. 7052 and 9014(c). Any findings of fact made in the discussion section of this opinion not separately stated in the findings section are incorporated by this reference in the findings section.

[2] The Warranty Deed was recorded in February 2016.

of the Trust. The parties intended that the Trust would own the Property in fee simple upon Ms. Suarez's death in exchange for the $50,000 the Ramoses paid to enable Ms. Suarez to make the down payment to purchase the Property. The Ramoses and Ms. Suarez verbally agreed that, despite the absolute language of the Warranty Deed, Ms. Suarez retained the right to live in the Property until her death and until then remained responsible for paying the mortgage payments, property taxes, and maintenance and utility costs. These terms of the Oral Agreement were not included in the Warranty Deed, which is the most recently recorded document evidencing ownership of the Property.[3] In addition, the Trust documents are silent regarding whether Ms. Suarez is entitled to live in the Property until her death.[4]

On October 26, 2019, Ms. Suarez filed a voluntary petition under chapter 7 of the Bankruptcy Code. On Schedule A/B, Ms. Suarez stated that she owned the Property, valued at $139,967, in fee simple, but later stated, in the same schedule, that "Ms. Suarez['s] personal home is in a [t]rust. Ms. Suarez has a[n] irrevocable generation skipping [t]rust and is not a beneficiary of the [t]rust." Ms. Suarez claimed a homestead exemption in the Property in the amount of $57,611.

## DISCUSSION

Ms. Suarez claims an exemption under the New Mexico homestead exemption statute, NMSA 1978, § 42-10-9, pursuant to 11 U.S.C. § 522(b)(1), (3).[5] To be exemptible, the property

---

[3] The parties do not dispute that the Warranty Deed was effectively delivered to the Trust. The Court therefore need not address that issue.

[4] The only reference to Ms. Suarez in the Trust agreement is in a provision naming Ms. Suarez as a beneficiary of a specific distribution from the Trust on the death of Anjenette Ramos or Donald Ramos, whichever is later.

[5] All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated. The Bankruptcy Code permits individual debtors to elect either the exemptions available to them under applicable non-bankruptcy state or federal law or to elect the exemptions provided under § 522(d), unless the applicable state law prohibits debtors from claiming exemptions provided under § 522(d) (*i.e.,* the state has "opted out" of the exemption scheme under

interest claimed as exempt must be property of the bankruptcy estate.[6] State law governs whether and to what extent Ms. Suarez has an interest in the Property and whether that interest is exemptible, but the Bankruptcy Code governs whether any such property interest is property of the estate.[7]

As a preliminary matter, the Court addresses the Trustee's argument that Ms. Suarez waived her claim to an exemptible equitable interest in the Property because she did not argue that she had an equitable interest in her response to the Trustee's objection or in response to the Trustee's discovery request asking the basis for Ms. Suarez's claim of exemption. The Court overruled the objection at the final hearing. Since filing her petition, Ms. Suarez consistently has maintained that, although the Property was transferred to the Trust, she nevertheless has an interest in the Property that is exemptible under New Mexico law. The issue was not waived because the precise nature of Ms. Suarez's interest has been at issue throughout these proceedings.

Generally, a warranty deed transfers fee simple ownership of property to the grantee.[8] In keeping with the general effect of a warranty deed, the Trustee argues that fee simple ownership of the Property was conveyed to the Trust and that Ms. Suarez no longer holds any interest in the Property. She further reasons that 1) because Ms. Suarez had no interest in the Property, the Property did not become part of the estate and 2) since only property of the estate can be exempted

---

§ 522(d)). *In re Channon,* 424 B.R. 895, 899 and n.3 (Bankr. D.N.M. 2010). New Mexico has not opted out of the Bankruptcy Code's exemption scheme.

[6] *Owen v. Owen*, 500 U.S. 305, 308 (1991) ("No property can be exempted (and thereby immunized), however, unless it first falls *within* the bankruptcy estate. Section 522(b) provides that the debtor may exempt certain property 'from property of the estate'; obviously, then, an interest that is not possessed by the estate cannot be exempted."); *In re Hess*, 618 B.R. 13, 18 (Bankr. D.N.M. 2020).

[7] *In re Dittmar*, 618 F.3d 1199, 1204 (10th Cir. 2010) ("[P]roperty interests are created and defined by state law. Once that state law determination is made, however, we must still look to federal bankruptcy law to resolve the extent to which that interest is property of the estate' under § 541." (quoting *Parks v. FIA Card Servs., N.A.*, 550 F.3d 1251, 1255 (10th Cir. 2008)).

[8] NMSA 1978, § 47-1-29 ("A deed in substance following the form entitled 'warranty deed' in the appendix to this act shall, when duly executed, have the force and effect of a deed in fee simple to the grantee . . . .").

from the estate, Ms. Suarez cannot claim an exemption in the Property. As the objecting party, the Trustee "bears the burden of proving that the exemption is not properly claimed."[9]

The Trustee's objection presents three questions. First, whether the terms of the Oral Agreement merged into the Warranty Deed. If not, whether the Oral Agreement is enforceable. Finally, if the Oral Agreement is enforceable, whether Ms. Suarez has an interest in the Property that became part of the bankruptcy estate when Ms. Suarez filed her petition and that may be exempted under New Mexico law. The Court addresses these questions in turn.

## I. THE TERMS OF THE ORAL AGREEMENT DID NOT MERGE INTO THE WARRANTY DEED

Because the Trustee acknowledges that the Ramoses and Ms. Suarez intended for Ms. Suarez to continue to live in the Property even after the Warranty Deed was signed, the Court understands the Trustee's argument to be based on the merger doctrine, under which agreements related to the conveyance of property are "presumed to be merged in a subsequently delivered and accepted deed . . . ."[10] More specifically, terms in a contract for the sale of real estate that (1) "inhere in the very subject-matter of the deed, such as title, possession, emblements, etc.; (2) [that] were] carried into the deed and of the same effect; [and] (3) . . . of which the subject-matter conflicts with the same subject-matter in the deed" are presumed to be merged.[11]

Even where the terms of an agreement differ from or contradict the terms of deed, however, courts will not apply the merger doctrine when the evidence shows that the terms of the deed are

---

[9] *In re Cohen*, No. 7-10-15616 JR, 2012 WL 400719, at *3 (Bankr. D.N.M. Feb. 7, 2012) (unpublished); *see also* Fed.R.Bankr.P. 4003(c).
[10] *El Sol Corp. v. Jones*, 1982-NMSC-045, ¶ 10, 97 N.M. 645, 642 P.2d 1104.
[11] *Amigo Petroleum Co. v. Equilon Enterprises LLC*, No. CV 03-1200 JH/WDS, 2006 WL 8444542, at *11 (D.N.M. Jan. 23, 2006) (unpublished) (quoting *Cont'l Life Ins. Co. v. Smith*, 1936-NMSC-074, ¶ 11, 41 N.M. 82, 64 P.2d 377).

the result of a mutual mistake by the parties.[12] "For a mistake to be mutual and common to both parties, it must appear that both parties have done what neither intended."[13] A mutual mistake may be shown by evidence extrinsic to the written agreement "even if the inconsistency cannot be detected on the face of the agreement and becomes clear only in light of surrounding circumstances."[14]

Here, there is no mention in the Warranty Deed of the Oral Agreement, Ms. Suarez's right to live in the Property, or Ms. Suarez's obligation to maintain the Property and pay the mortgage and other costs. However, both Ms. Ramos and Ms. Suarez credibly testified, and the Trustee does not dispute, that they intended the Property to be Ms. Suarez's until her death. Consistent with that position, Ms. Suarez stated on Schedule A/B that she owned the Property in fee simple on the petition date. After the Warranty Deed was executed, Ms. Suarez continued to live in the Property, pay the mortgage and other expenses, and maintain the Property. The Ramoses have never lived in the Property and have not sought to sell the Property.

The Warranty Deed also states that the deed is subject to "all restrictions, reservations, and easements of record, if any, with warranty covenants." Under New Mexico statutes, use of the term "warranty covenants" indicates that the property is "free from all former and other grants, bargains, sales, taxes, assessments and encumbrances of what kind and nature soever [sic]."[15]

---

[12] *See Hyder v. Brenton*, 1979-NMCA-076, ¶ 13, 93 N.M. 378, 600 P.2d 830 (noting that fraud or mistake are exceptions to the merger doctrine).

[13] *In re Crowder*, No. 7-96-10336 ML, 2008 WL 5157861, at *4 (Bankr. D.N.M. Aug. 29, 2008) (quoting *Cargill v. Sherrod*, 1981-NMSC-071, ¶ 12, 96 N.M. 431, 631 P.2d 726, 728 (1981)).

[14] *In re Crowder*, 2008 WL 5157861, at *4 (quoting *Twin Forks Ranch, Inc. v. Brooks*, 1995-NMCA-128, ¶ 13, 120 N.M. 832, 907 P.2d 1013)).

[15] NMSA 1978, § 47-1-37 ("In a conveyance of real estate the words, 'warranty covenants' shall have the full force, meaning and effect of the following words: 'the grantor for himself, his heirs, executors, administrators and successors, covenants with the grantee, his heirs, successors and assigns, that he is lawfully seized in fee simple of the granted premises; that they are free from all former and other grants, bargains, sales, taxes, assessments and encumbrances of what kind and nature soever; that he has good right to sell and convey the same; and that he will, and his heirs, executors, administrators and successors shall

Contrary to that covenant, the Property is not free from all encumbrances, since it is collateral for Ms. Suarez's loan from Wells Fargo Bank and subject to Ms. Suarez's right to an ownership interest in and to possess the Property for the remainder of her life. In addition, the Warranty Deed is silent as to Ms. Suarez's obligation under the Oral Agreement to repay the Wells Fargo Bank loan.

The Ramoses and Ms. Suarez intended that, until Ms. Suarez's death, notwithstanding the execution and delivery of the Warranty Deed, the Property would be Ms. Suarez's property, she would have the right to continue to possess the Property, and would continue to be responsible for payments on the Wells Fargo Bank loan and the property taxes. The Court therefore finds and concludes that the Warranty Deed "does not express what was really intended, . . . [and purports to achieve] what neither party intended[.]"[16] In short, the Warranty Deed's silence on these matters was a mutual mistake.[17] Consequently, the terms of the Oral Agreement, including those giving Ms. Suarez the right to live in the Property until her death, do not merge into and are not superseded by the Warranty Deed.

---

warrant and defend the same to the grantee and his heirs, successors and assigns forever against the lawful claims and demands of all persons.").

[16] *Twin Forks Ranch, Inc. v. Brooks*, 1995-NMCA-128, ¶ 11, 120 N.M. 832, 907 P.2d 1013; *see Cargill*, 1981-NMSC-071, ¶ 12 ("For a mistake to be mutual and common to both parties, it must appear that both parties have done what neither intended.").

[17] *See Leigh v. Hertzmark*, 1967-NMSC-064, ¶ 6, 77 N.M. 789, 427 P.2d 668 (holding that a term of a purchase agreement did not merge into a subsequent real estate contract where the term was omitted by mistake); *Harkless v. Laubhan*, 219 So.3d 900, 905 (Fla. Dist. Ct. App. 2016) (stating that, "[b]ecause all parties to the . . . sales contract agree[d] that [a part of the sales contract] was intended to reserve [a party's] right to receive rent, that right did not merge into the [subsequent d]eed as a matter of law" even where the deed did not expressly reserve that right).

## II. THE ORAL AGREEMENT IS ENFORCEABLE

The Trustee argues that the Oral Agreement is not enforceable because it violates the statute of frauds, which "requires that any conveyance of real property be in writing."[18] The Trustee's statute of frauds argument is unavailing.

The Trustee can neither assert the statute of frauds offensively, nor in the existing circumstances, assert it defensively. The Trustee has no special bankruptcy powers to wield the statute of frauds offensively, even though the Trustee may pursue a debtor's cause of action that is part of the estate, because the statute of frauds is not a basis for a claim.[19] Moreover, the Trustee may not exercise her rights under § 544 to defeat Ms. Suarez's homestead exemption.[20] Section 558 governs the Trustee's assertion of the statute of frauds defensively; it is not an avoidance mechanism that empowers a trustee to use the statute of frauds offensively.[21] Section 558 provides that "[t]he estate shall have the benefit of *any defense available to the debtor* as against any entity

---

[18] *Bd. of Educ., Gadsden Indep. Sch. Dist. No. 16 v. James Hamilton Const. Co.*, 1994-NMCA-168, ¶ 23, 119 N.M. 415, 891 P.2d 556; *cf.* NMSA 1978, § 47-1-5 ("All conveyances of real estate shall be subscribed by the person transferring his title or interest in said real estate, or by his legal agent or attorney.").

[19] *See In re Beach*, 447 B.R. 313, 323 (Bankr. D. Idaho 2011) ("A cause of action is an asset of the estate to be used as the trustee sees fit. By contrast, a defense is something that may prevent an unjust claim *against the estate*.") (emphasis added) (quoting 5 Collier on Bankruptcy § 448.01[1][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[20] *In re Murray*, 506 B.R. 129, 139 (10th Cir. BAP), *aff'd*, 586 F. App'x 477 (10th Cir. 2014) (rejecting the trustees' argument that their broad avoidance powers under § 544 applied to defeat exemptions); 5 Collier on Bankruptcy § 544.01 (Alan N. Resnick & Henry J. Sommer eds, 16th ed.) ("[S]ection 544 may not be used as a mechanism to attack a claim of exemption because entitlement to an exemption arises by statute; there is no identifiable transfer of a property interest or obligation undertaken in its creation that may be avoided pursuant to section 544.").

[21] *In re Garcia*, 465 B.R. 181, 191 n.10 (Bankr. D. Idaho 2011) (stating that "the application of § 558 [wa]s not appropriate . . . because [the trustee was] using the statute of frauds, not as a defense to any claim, but offensively in an attempt to undo [the defendants'] purchase of the [p]roperty" from the debtors and that "[§] 558 is not an avoidance mechanism in its own right"); *In re Kimble*, 344 B.R. 546, 555–56 (Bankr. S.D. Ohio 2006) (stating that "because the [t]rustee is not a party to the oral lease agreement between the [d]ebtors and [a third party], he may not challenge its enforceability by invoking the statute of frauds" to challenge the debtor's claim of exemption in their residence where the trustee had not assumed the oral lease at issue and the parties to the agreement did not dispute its enforceability).

other than the estate, including . . . *statutes of frauds* . . . ."[22] The Trustee stands in the shoes of the debtor with respect to those defenses.[23] The enforceability of the Oral Agreement, which was made in New Mexico, is governed by New Mexico law. Under New Mexico law, "[t]he statute of frauds is an affirmative defense applicable in actions seeking to enforce oral contracts."[24] An affirmative defense like the statute of frauds is raised to prevent liability to a third party – it is not an independent basis for a cause of action.[25] Here, there has been no breach of the Oral Agreement and the Ramoses have not initiated an action with respect to the Oral Agreement. Hence, there is no claim in response to which Ms. Suarez or the Trustee could assert the statute of frauds as a defense.

### III. MS. SUAREZ HAS AN EXEMPTIBLE LIFE ESTATE INTEREST IN THE PROPERTY

Having concluded that the terms of Oral Agreement survive the execution of the Warranty Deed and that the Oral Agreement is enforceable, the Court turns to the nature of Ms. Suarez's interest. New Mexico's homestead statute permits a homestead exemption "in a dwelling house and land occupied by the person or in a dwelling house occupied by the person although the dwelling is on land owned by another, provided that the dwelling is owned, leased or being purchased by the person claiming the exemption."[26] Equitable ownership, including a life estate

---

[22] (Emphasis added.).
[23] While the Trustee may assert any "defense available to the debtor" under § 558, that right "differs from the trustee's exclusive right to assert the debtor's causes of action." *Beach,* 447 B.R. at 323 (quoting 5 Collier on Bankruptcy § 558.01[1][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)).
[24] *Sanchez v. Martinez*, 1982-NMCA-168, ¶ 10, 99 N.M. 66, 653 P.2d 897.
[25] *See In re Beach*, 447 B.R. 313, 323 (Bankr. D. Idaho 2011) ("A cause of action is an asset of the estate to be used as the trustee sees fit. By contrast, a defense is something that may prevent an unjust claim *against the estate*.") (emphasis added) (quoting 5 Collier on Bankruptcy § 448.01[1][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)).
[26] § 42-10-9.

where legal title is in a third party, falls within this provision.[27] In addition, a life estate becomes part of the bankruptcy estate when the debtor files a petition for bankruptcy relief.[28]

The evidence here demonstrates that Ms. Suarez holds a life estate interest in the Property. The Trustee does not dispute that, under the Oral Agreement, Ms. Suarez is entitled to live in the Property until her death. In addition, Ms. Suarez performs typical duties of a holder of a life estate interest. In addition to living in the Property, Ms. Suarez pays the property taxes and the costs of maintenance for the Property.[29] Pursuant to the Oral Agreement, Ms. Suarez also pays both the principal and interest due on the Wells Fargo Bank mortgage debt that encumbers the Property as well as property insurance premiums. These costs are incidents of ownership.[30] Not only are these facts consistent with life tenancy by Ms. Suarez, but they are inconsistent with a complete absence of ownership interest in the Property. In other words, Ms. Suarez's continued payment of the costs of ownership as well as her continued occupancy of the Property even after transfer of the Property to the Trust support the Court's finding that under the Oral Agreement Ms. Suarez retained a life estate interest in the Property.

Although she does not dispute these facts, the Trustee makes three legal arguments against recognizing an exemptible interest in the Property. The Trustee argues that, assuming the Oral

---

[27] *In re Nesset*, 33 B.R. 326, 327 (Bankr. D.N.M. 1983) (applying New Mexico law and stating, "[E]quitable as well as legal owners of real property are entitled to claim the exemption"); *In re Weilert*, No. BAP EC-15-1144-JUDTA, 2016 WL 3771905, at *8 (9th Cir. BAP July 8, 2016) ("A life estate is also an interest in real property which gave [the trust beneficiary] the right to claim a homestead exemption despite legal title being held by [a trust].").

[28] Section 541(a)(1) (stating that the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case").

[29] 31 C.J.S. Estates §§ 54, 56 (stating that a life tenant generally must pay the property taxes and maintain the property to avoid waste).

[30] *See In re Kirby*, 403 B.R. 169, 171 (Bankr. D. Mass. 2009) (stating that "the responsibility for paying the existing mortgage debt, taxes, and insurance … are incidents of ownership"); *In re Olivier*, 819 F.2d 550, 554 (5th Cir. 1987) (stating that "acts of ownership" include "insuring and maintaining the property"); *Jones v. Jones*, 470 So.2d 1207, 1208 (Ala. 1985) (stating that a party "retained all the incidents of ownership of the property [by paying] the taxes, collect[ing] the rent, and pa[ying] for repairs to the property").

Agreement purports to give Ms. Suarez a life estate, Ms. Suarez has only a legal claim based on a contract, not a property interest in the Property. Relying on *Madrid v. Marquez*,[31] the Trustee argues that, "where a party is orally promised a life estate, but does not receive it, and substantially performs the rest of the agreement, that party . . . [only has a] right to either rescission or performance."[32] In *Madrid*, the Madrids verbally agreed to transfer their home to Marquez in exchange for the right to live in the home until their deaths.[33] The Madrids executed a warranty deed to their home transferring title to Marquez, but the warranty deed did not refer to a life estate for the Madrids.[34] After obtaining the deed, Marquez tried to force the Madrids from their home.[35] The Madrids sued, "alleging fraud [and] breach of contract, . . . and request[ing] rescission and equitable reformation."[36] At trial, Marquez argued that the statute of frauds barred enforcement of the verbal agreement. "The district court enforced [the] oral promise . . . based on partial performance and properly fashioned an equitable remedy that allowed the Madrids to have the benefit of their bargain or rescind the entire agreement."[37]

*Madrid* does not support the Trustee's position. The option to enforce or rescind the Oral Agreement as a remedy would arise only if the Trust breached the Oral Agreement.[38] In *Madrid*, for example, the non-breaching party that held the life estate under an oral agreement sought to enforce the oral agreement, and the breaching party sought to avoid the agreement by asserting the

---

[31] *Madrid v. Marquez*, 2001-NMCA-087, ¶¶ 1-2, 131 N.M. 132, 33 P.3d 683.
[32] Doc. 43, pg. 4.
[33] *Id.* ¶ 2.
[34] *Id.*
[35] *Id.*
[36] *Id.* ¶ 1.
[37] *Id.* ¶ 11.
[38] *Sanchez v. Martinez*, 1982-NMCA-168, ¶ 10, 99 N.M. 66, 653 P.2d 897 ("The statute of frauds is an affirmative defense applicable in actions seeking to enforce oral contracts."); *see* Fed. R. Civ. P. 8(c)(1). The Trustee appears to acknowledge that a breach is necessary to her argument by stating that a legal claim arises "where a party is orally promised a life estate but *does not receive it*" (emphasis added)). Doc. 43.

statute of frauds as a defense. In contrast, Ms. Suarez, the Ramoses, and the Trustee all admit that the Oral Agreement was made, and the Ramoses, as trustees of the Trust, have not breached the Oral Agreement.[39] Further, under *Madrid* the holder of the life estate had the right to retain the life estate. That is exactly what Ms. Suarez seeks to do here. Hence, *Madrid* does not support the Trustee's assertion that Ms. Suarez has only a contract right, not a life estate.

Next, the Trustee argues that Ms. Suarez's interest in the Property is invalid because it is not recorded. The Court disagrees. "The New Mexico recording statute protects bona fide purchasers for value who purchase property without notice of another party's interest."[40] That statute does not preclude enforcement of an unrecorded instrument as between the parties to the instrument.[41] When objecting to a claim of exemption, the Trustee does not stand in the shoes of a bona fide purchaser for value under § 544.[42] Thus, the fact that a life estate in Ms. Suarez is unrecorded is immaterial under the circumstances here.

Finally, the Trustee argues that Ms. Suarez's interest in the Property is a "month-to-month unwritten lease of the Property from the Trust" and that the claim of exemption must be denied because the value of the lease is so low as to be meaningless.[43] The Trustee bases this argument on *In re Hess*, in which the court sustained the trustee's objection to the debtor's exemption of his residence.[44] In that case, the debtor had conveyed ownership of his residence to a limited-liability company ("LLC"), of which the debtor was the sole and managing member, and argued that he

---

[39] *Herrera*, 1999-NMCA-034, ¶ 15 (stating that "it is clear that a party may not plead the statute of frauds as a defense while at the same time admit in the pleadings or otherwise before the court the making of the contract as alleged by the plaintiff").
[40] *In re Crowder*, 225 B.R. 794, 797 (Bankr. D.N.M. 1998) (citing NMSA 1978, § 14-9-3).
[41] *Cf. Amethyst Land Co. v. Terhune*, 2014-NMSC-015, ¶ 11, 326 P.3d 12 ("A deed of land, though not recorded, is good as between grantor and grantee.") (quoting *Ames v. Robert*, 1913–NMSC–021, ¶ 6, 17 N.M. 609, 131 P. 994).
[42] *See supra*, n. 20 and the accompanying discussion.
[43] Doc. 43, pg. 7.
[44] *In re Hess*, 618 B.R. at 21.

had a month-to-month unwritten lease in the residence.[45] The court held that, while the debtor "may claim the homestead exemption to the extent of the value of the estate's interest in the lease[,] . . . that value is little or nothing [because a] month-to-month lease may be terminated by 30 days prior written notice from the owner to the resident."[46] It went on, "Because the trustee controls [the LLC] via [the d]ebtor's 100% ownership interest, the trustee could easily terminate the lease at any time, giving [the d]ebtor 30 days to vacate. [The d]ebtor's interest in the oral lease therefore has no significant value."[47] It concluded that the value of the "[d]ebtor's oral month-to-month lease is not enough to allow him to exempt the house."[48]

The Court has concluded that Ms. Suarez holds a life estate in the Property, not a leasehold interest. Even if Ms. Suarez had a leasehold interest, however, this case is distinguished from *Hess* by two key facts. Ms. Suarez would hold a lease for life, not a month-to-month lease. In addition, the Trustee would have no authority to terminate the lease as the trustee in *Hess* did. Consequently, unlike in *Hess*, Ms. Suarez's interest in the Property would not be *de minimis*.

## CONCLUSION

For the foregoing reasons, the Court concludes that Ms. Suarez holds an interest in the Property in the form of a life estate that became part of the bankruptcy estate and falls within New Mexico's homestead statute. The Trustee's objection to Ms. Suarez's claim of exemption will be overruled. The Court will issue a separate order consistent with this memorandum opinion.

_____
Robert H. Jacobvitz
United States Bankruptcy Judge

---

[45] *Id.* at 16.
[46] *Id.* at 19.
[47] *Id.*
[48] *Id.* at 21.

Date Entered on Docket: December 7, 2020

Copy To:

Michael K. Daniels
Attorney for Debtor
PO Box 1640
Albuquerque, NM 87103-1640

Wayne O'Brien McCook
Attorney for Ms. Suarez
McCook Law Firm, LLC/UpRight Law LLC
500 Marquette Avenue NW, Suite 1200
Albuquerque, NM 87102

Daniel A. White
Attorney for Trustee
Askew & White, LLC
1122 Central Ave SW, Ste. 1
Albuquerque, NM 87102

U.S. Trustee
United States Trustee
PO Box 608
Albuquerque, NM 87103-0608